Catherine P. TUOHY, Petitioner,

v.

**COMMISSIONER OF SOCIAL SECURITY.**

No. 04–2586.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit L.A.R. 34.1(a) Feb. 10, 2005.

Decided April 1, 2005.

Thomas H. Klein, Smith & Klein, Eatontown, NJ, for Appellant.

Peter G. O'Malley, Office of United States Attorney, Newark, NJ, for Appellee.

Before BARRY, FUENTES, and VAN ANTWERPEN, Circuit Judges.

## OPINION

FUENTES, Circuit Judge.

Appellant Catherine P. Tuohy appeals the order of the District Court, affirming the decision of the Commissioner of Social Security's ("Commissioner") denial of social security disability benefits. Tuohy challenges the Administrative Law Judge's ("ALJ") determination at step four of the five-step evaluation process promulgated by the Social Security Administration ("SSA") to determine whether an individual is disabled. At step four, the ALJ concluded that Tuohy's impairments did not preclude her from returning to her prior employment. For the reasons stated below, we conclude that the Commissioner's finding is based on substantial evidence, and, therefore, we will affirm.

## I. FACTS & PROCEDURAL HISTORY

Tuohy was born on November 4, 1938, and was 60 years old at the time of the hearing before the ALJ. She has a high school education and prior relevant work experience as a receptionist/clerk-typist, and receptionist/switch board operator. She claims that chronic sinusitis, allergies, and migraine-like symptoms have rendered her unable to perform substantial gainful work since 1992, and, accordingly, she is entitled to disability benefits. *See* 42 U.S.C. § 423.

Tuohy filed an application for disability benefits in June 1997. This claim was denied, both initially and on reconsideration. These denials were predicated upon a finding that she had the ability to return to work.

An ALJ considered the case *de novo*. At the hearing, Tuohy was represented by an attorney. She presented her own testimony, which was coupled with the testimony of her husband. The ALJ considered the testimony, along with a variety of medical reports and other evidence. He concluded, among other things, that: (1) Tuohy has not engaged in substantial gainful activity since July 16, 1992; (2) Tuohy's sinus problems do not present an impairment that meets the relevant "listing" in the applicable regulations; (3) Tuohy's assertions are not entirely credible in light of the medical evidence and her testimony; (4) Tuohy does suffer from certain limitations, i.e., she should never climb ladders while taking Elavil (a medication she takes to mitigate the symptoms of her headaches), she should avoid working around moving machinery or automotive equipment, and she should avoid prolonged exposure to atmospheric extremes; and, (5) these impairments do not prevent Tuohy from performing her past relevant work. Consequently, the ALJ concluded that Tuohy was not disabled as defined by the Social Security Act and, hence, not entitled to benefits. The Appeals Council denied Tuohy's request for review of the ALJ's decision.

Tuohy then filed an action in the United States District Court for the District of New Jersey seeking review of the Commissioner's decision. *See* 42 U.S.C. § 405(g). The District Court affirmed the Commissioner's decision, finding that the

Commissioner's determinations were supported by substantial evidence.

We have jurisdiction over this appeal from the final decision of the District Court pursuant to 28 U.S.C. § 1291.

## II. DISCUSSION

### A. Statutory and Regulatory Framework

Entitlement to disability benefits requires a showing that the applicant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The applicable statute requires an applicant to furnish, among other things, medical evidence, § 423(d)(5)(A), and to show that the impairment precludes work which exists in the national economy. § 423(d)(2)(A). Pursuant to regulations promulgated by the SSA, a five-step evaluation process governs the determination of whether a person meets these criteria and is therefore disabled and entitled to benefits. *See* 20 C.F.R. § 404.1520; *see also Jones v. Barnhart,* 364 F.3d 501, 503 (3d Cir.2004) (explaining the manner in which an ALJ should apply the five-step evaluation process).

In step one of this process, the Commissioner decides whether the claimant is currently engaging in substantial gainful activity. If so, the claimant is not eligible for benefits. § 404.1520(a)(4)(i). In step two, the question is whether the claimant is suffering from a severe impairment. If the Commissioner determines that the impairment is not severe, then the claimant is not eligible for benefits.

§ 404.1520(a)(4)(ii). At step three, the Commissioner evaluates whether the claimant suffers from a listed impairment. If so, the claimant is automatically eligible for benefits. § 404.1520(a)(4)(iii). If not, the Commissioner moves on to step four. At step four, the Commissioner determines whether the claimant retains the "residual functional capacity"[1] to perform her past relevant work. If she can, then she is not eligible for benefits. § 404.1520(a)(4)(iv). Lastly, in step five, the question is whether job opportunities exist in sufficient numbers in the national economy that the claimant can perform given the claimant's medical impairments, age, education, past work experience, and residual functional capacity. § 404.1520(a)(4)(v). If so, the claimant is not eligible for benefits. At this ultimate step, the burden shifts from the claimant to the Commissioner, whereby the Commissioner must show that the claimant is capable of performing other available work that exists in the national economy. If the Commissioner makes such a showing, the claimant will be denied benefits. *Jones,* 364 F.3d at 503

### B. Standard of Review

Our review of the Commissioner's application of the five-step evaluation is limited to determining whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. § 405(g). We do not undertake a *de novo* review of the decision, nor do we re-weigh the evidence in the record. *Monsour Med. Ctr. v. Heckler,* 806 F.2d 1185, 1190–91 (3d Cir.1986). Substantial evidence is evidence that is less than a preponderance, but more than a mere scintilla. *Jones,* 364 F.3d at 503.

---

1. "Residual functional capacity" is defined as "the most you can still do despite your limitations." 20 C.F.R. § 404.1545(a)(1).

## C. Whether the Determination Below is Based on Substantial Evidence

This appeal arises from the ALJ's determination at step four. Tuohy argues that the ALJ erred in finding that she retained the residual functional capacity to perform the exertional demands of light work,[2] subject to the limitations that she: (1) should not climb ladders while taking Elavil; (2) should not work around moving or automotive equipment; and, (3) should avoid prolonged or concentrated exposure to atmospheric extremes. It is undisputed that Tuohy's previous work required her to sit/stand for 5–6 hours, type, and lift 15–20 pounds. Therefore, pursuant to the applicable regulation, Tuohy previously performed light work. *See* 20 C.F.R. § 404.1567(b).

Tuohy argues that her residual functional capacity prevents her from returning to the type of work she performed in the past. In essence, she makes four arguments: (1) that the ALJ's decision is not based on substantial evidence because he did not take into account her inability to perform work through continuous attendance in a regular work week; (2) that the ALJ did not adequately account for her subjective symptoms; (3) that the ALJ's adverse credibility finding constitutes legal and factual error requiring reversal; and, (4) that the ALJ did not undertake a function-by-function analysis of her residual functional capacity.

The Commissioner argues that the District Court was correct in determining that the ALJ's finding is supported by substantial evidence. Specifically, the Commissioner notes that: (1) the medical evidence does not establish that the three conditions that Tuohy alleges to have are disabling (namely, allergies, sinusitis, or headaches); (2) the ALJ is only required to give great weight to a claimant's subjective complaints and alleged limitations when those allegations are supported by competent medical evidence; (3) with respect to credibility, the ALJ observed Tuohy at the hearing and considered the fact that Tuohy indicated that she drives an automobile, cooks, shops, and performs household chores as a matter of her daily activities, and did not exhibit certain symptoms during the course of the hearing and, thus, her claims were not credible; and, (4) the ALJ undertook a thorough review and considered all appropriate factors in reaching his conclusion regarding residual functional capacity.

### 1. Performing Work on a Regular and Continuous Basis

While the ALJ found that Tuohy should avoid climbing ladders under certain conditions and the like, he also concluded that she retained the residual functional capacity to engage in work equivalent to her past work as a receptionist/clerk-typist and receptionist/switchboard operator. This past work required her to stand/walk for four hours and sit for four hours per day. In arriving at this finding, the ALJ cites doctors' reports, which state that Tuohy's condition is steadily improving and that she should not be precluded from employment.

In contrast, where the ALJ found that Tuohy's capacity was diminished relative to her past work, he so stated: i.e., that Tuohy should not climb ladders while taking Elavil, should not work around moving or automotive equipment, and should avoid prolonged or concentrated exposure to atmospheric extremes. Therefore, contrary

---

**2.** "Light work" involves mostly walking and standing, frequently lifting and carrying items that weigh up to ten pounds, and occasionally lifting and carrying items that weigh up to twenty pounds. 20 C.F.R. § 404.1567(b). A job is also considered light work if the individual sits most of the day but operates arm or leg controls. *Id.*

to Tuohy's assertion, the ALJ's reasoning shows that he considered her ability to work for a continuous, sustained period. His conclusion is supported by medical reports, such as the reports by Dr. Gennaro, which show that despite Tuohy's complaints, she remained alert and mentally clear. In fact, Dr. Gennaro also noted that, at one juncture, Tuohy had reported that she suffered from only one migraine headache in three months. Also, Tuohy testified that she drives, cooks, shops and performs household chores, all of which require sustained, continuous involvement. Consequently, the ALJ's decision in this regard is supported by substantial evidence. *See Jones,* 364 F.3d at 503.

### 2. Subjective Symptoms and Credibility

When addressing the issue of subjective symptoms, the ALJ recognized that "consideration must be given to subjective allegations." The ALJ went on to determine that Tuohy's statements concerning her subjective symptoms were not credible. This finding was based on the inconsistency between Tuohy's testimony and various medical reports. Specifically, Tuohy stated that she would be unable to work because she is unable to concentrate and she often falls asleep in the middle of conversations. Yet, medical reports show that Tuohy remained alert and mentally clear. In addition, Tuohy was able to concentrate during the hearing and did not fall asleep in the midst of her testimony. *See Burns v. Barnhart,* 312 F.3d 113, 130–31 (3d Cir. 2002) (holding that an ALJ's decision to discount a subjective claim of drowsiness was supported by substantial evidence where the ALJ noted, among other things, that the claimant did not appear drowsy at the hearing). In fact, one physician, Dr. Thompson, stated that Tuohy should not be precluded from performing her employment activities. Tuohy argues that the

ALJ unduly relied on Dr. Thompson's statement. However, the ALJ followed the dictate of current case law by weighing the conflicting evidence that was presented and explaining his rejection of Tuohy's subjective allegations with reference to the reports by multiple doctors. *See Sykes v. Apfel,* 228 F.3d 259, 266 n. 9 (3d Cir.2000).

### 3. Function–by–Function Analysis

Finally, Tuohy argues that the ALJ erred by failing to undertake a function-by-function analysis of her residual functional capacity to perform work-related activities. We find this argument to be without merit. The ALJ evaluated specific activities that relate to Tuohy's former employment, i.e. her ability to type, receive telephone calls, greet people, file paperwork, and use a computer. He then states that her previous employment did not require her to "climb ladders or work around large moving machinery or automotive equipment." These findings show that the ALJ undertook an individualized review of all relevant evidence and engaged in a function-by-function assessment of Tuohy's work capacity. Further, that the ALJ made specific reference to Tuohy's migraine headaches belies her argument that the ALJ made no mention of headaches. In short, the record does not support Tuohy's contention that the ALJ failed to adequately evaluate the various factors contributing to her residual functional capacity.

### CONCLUSION

For the foregoing reasons, we will affirm the judgment of the District Court.