

Opinions of the United
States Court of Appeals
for the Third Circuit

5-10-2005

# Jaramillo v. Comm Social Security

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-2817

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Jaramillo v. Comm Social Security" (2005). *2005 Decisions.* Paper 1227.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1227

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

———

No. 04-2817

———

MARIA JARAMILLO,
o/b/o
GUILLERMO MESA,
Appellant

v.

COMMISSIONER OF SOCIAL SECURITY

———

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 02-cv-02728)
District Judge: Honorable Joseph A. Greenaway, Jr.

———

Submitted Under Third Circuit LAR 34.1(a)
May 9, 2005

Before:  SLOVITER and FISHER, Circuit Judges, and
POLLAK, District Judge*

(Filed  May 10, 2005)

———

OPINION

———

* Hon. Louis H. Pollak, Senior Judge, United States District Court for the
Eastern District of Pennsylvania, sitting by designation.

SLOVITER, Circuit Judge.

Maria Jaramillo,[1] on behalf of her son, Guillermo Mesa ("Mesa"), appeals the

April 30, 2004 Order of the United States District Court for the District of New Jersey

affirming the Commissioner of Social Security's denial of Mesa's application for Social

Security Income ("SSI") benefits. The District Court had jurisdiction under 42 U.S.C. §

405(g). We have jurisdiction to review the final order of the District Court under 28

U.S.C. § 1291. For the reasons given below, we will affirm.

**I.**

Because the parties are familiar with the case, we need not present a detailed

recitation of the facts.

On April 28, 1999, Jaramillo filed an application for SSI payments with the Social

Security Administration ("SSA") claiming that Mesa suffered from a disability. The SSA

denied her claim on November 4, 1999 and again after reconsideration on September 11,

2000. Jaramillo then requested a hearing before an Administrative Law Judge ("ALJ") to

review her application.

A. Evidence Presented

Jaramillo presented evidence of Mesa's medical examinations and psychological

evaluations showing that he suffered from Guillain-Barre syndrome, transient hand

tremors, nocturnal enuresis, Attention Deficit Hyperactivity Disorder ("ADHD"), and a

---

[1] Although the dockets in the Social Security Administration, District Court and
this court spell appellant's name as Jaramilla, the underlying record shows her name as
Jaramillo and we use the latter here.

learning disorder.

1. Medical Reports

The medical reports showed that Mesa was six years old when he was diagnosed with Guillain-Barre Syndrome, "an acute progressive poly-neuropathy characterized by period muscle weakness and numbness." A-26. Reports from Mesa's treating physicians, issued each year from 1999 through 2001, stated that Mesa suffered from a neurologically-based learning disability, an attention problem, abnormal reflexes, and tremors in his right hand. He was diagnosed with, inter alia, ADHD, enuresis, and a learning disability. One treating physician reported that Mesa's impairments were an "extreme" limitation on his concentration, persistence, or pace.

2. State Agency Evaluation

On September 3, 1999, a State Agency Psychological Consultant reviewed the record and reported that Mesa's impairments were severe because they caused "marked" limitation in his concentration, persistence, or pace. However, the Consultant concluded that the impairments did not meet, medically equal, or functionally equal the severity of a "Listing," provided for in 20 C.F.R. § 404, Subpart P, App. 1.

Between August 10, 2000 and August 15, 2000, Mesa submitted to a physical examination and a psychiatric evaluation, both at the request of the SSA. The physical examination recorded normal growth parameters. The psychiatric examiner found that Mesa had ADHD, but was able to stay focused for a long period of time. On August 30,

3

2000, the State Agency Psychological Consultant completed a second evaluation. The Consultant concluded that Mesa's ADHD was severe, but that it failed to meet, medically equal, or functionally equal a Listing.

On May 17, 2001, Mesa's case manager reported that Mesa was attending a special class for bilingual, multi-disabled individuals. The case manager also reported that Mesa's Guillain-Barre Syndrome, which had occurred after an infection, brought about strong fatigue and pain in his lower extremities. Mesa remained below grade level, and exhibited symptoms of ADHD, including hyperactivity and a short attention span.

### 3. Jersey City Psychometric and Learning Disability Test

On April 26, 1999, the Jersey City School System performed a normative psychometric and learning disability test on Mesa. It found that Mesa exhibited appropriate social skills, a pleasant demeanor, sensitivity toward his performance in school, somewhat realistic goals for the future, and a good verbal command of Spanish. However, it noted a delay in the development of Mesa's adaptive/self-help skills. On May 26, 1999, Mesa took an IQ test, which placed him in the borderline range of intellectual functioning and he was determined to be eligible for special education.

### 4. Teacher Evaluations

Mesa's teacher completed a questionnaire on June 11, 1999, and reported that Mesa was not working at grade level, working independently, applying knowledge, or following instructions. However, the teacher noted that Mesa did not have problems

communicating with his peers or participating in school physical activities (but noted that Mesa tired early). Finally, the teacher noted that Mesa's behavior was satisfactory but that his attention span was very poor and he was unable to concentrate and complete tasks.

On May 25, 2000, a second teacher questionnaire reported that Mesa performed poorly, failed to complete assignments, and suffered from a language barrier. The teacher also reported that Mesa could not control his behavior, concentrate, pay attention, or complete tasks.

B. The ALJ's Decision

After an oral hearing conducted on September 12, 2001, the ALJ found that Mesa was not entitled to Social Security benefits, and summarized his findings as follows:

> 1) The claimant has not engaged in substantial gainful activity since his application date of April 28, 1999.
>
> 2) The medical evidence establishes that the claimant has the following severe impairment: history of Guillain-Barre syndrome, transient hand tremors, nocturnal enuresis, ADHD, and a learning disorder.
>
> 3) The claimant has no impairment that meets or medically or functionally equals the criteria of any impairment listed in Appendix 1, Subpart P, Regulations No. 4.
>
> 4) The claimant has not been "disabled" at any time through the date of this decision (20 C.F.R. § 416.924(d)).

A-32.

The Social Security Appeals Council denied review, the District Court affirmed,

5

and Mesa has filed a timely appeal.

## II.

We "review the ALJ's decision under the same standard of review as the District Court, to determine whether there is substantial evidence on the record to support the ALJ's decision." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 118 (3d Cir. 2000); see also 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 522, 564-65 (1988).

To qualify for SSI benefits under the Social Security Act, Mesa must demonstrate that he is "disabled" within the meaning of 42 U.S.C. § 1382.[2] An examiner makes the following three-step evaluation, found in 20 C.F.R. §§ 416.924, 416.926a, to determine whether a claimant under the age of 18 is disabled, and therefore entitled to SSI benefits: At step one, if the claimant is engaged in substantial gainful activity, s/he is not disabled. At step two, if the claimant is not engaged in substantial gainful activity, then the examiner will determine whether the physical or mental impairment is "severe." At step three, if the impairment is severe, the examiner will determine whether the impairment meets, medically equals or functionally equals an Impairment Listing found in 20 C.F.R.

_____

[2] § 1382c(a)(3)(C)(I) provides that a claimant under the age of 18 is considered disabled if "that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Id.

6

§ 404, Subpart P, App. 1.

If the child's impairment does not medically meet a listing under 20 C.F.R. §

416.902, the examiner must determine whether the impairment functionally equals a

listing by evaluating the child's six domains of functioning: 1) acquiring and using

information; 2) attending and completing tasks; 3) interacting and relating with others; 4)

moving about and manipulating objects; 5) caring for yourself; and 6) health and physical

well being.  See 20 C.F.R. § 416.926a(b)(1).  An impairment functionally equals a listing

if the child has "marked" limitations[3] in at least two domains, or an "extreme"

limitation[4] in at least one domain.

Applying the above test, the ALJ found that Mesa was not disabled.  Although

Mesa satisfied the requirements at step one and step two, the ALJ determined that Mesa

could not meet the requirements at step three because he did "not have an impairment or

combination of impairments that meets or medically equals in severity the criteria of any

---

[3] "Marked" Limitation in a particular domain is defined as: "[W]hen your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities. . . . 'Marked' limitation also means a limitation that is 'more than moderate' but 'less than extreme.'  It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least, two, but less than three, standard deviations below the mean."  20 C.F.R. § 416.926a(e)(2)(i).

[4] "Extreme" Limitation in a particular domain is defined as: "[W]hen your impairment(s) interferes very seriously with your ability to independently initiate, sustain, or complete activities.  Your day-to-day functioning may be very seriously limited when your impairment(s) limit several activities. . . .  It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three deviations below the mean."  20 C.F.R. § 416.926a(e)(3)(i).

impairment in section 111.00, 112.00, or any other impairment in the Listings." A-29.

Furthermore, the ALJ determined that Mesa's impairments did not "functionally equal" one of the listings because he did not suffer "extreme" limitations in any of the six functional domains and only suffered "marked" limitations in one (his ability to attend and complete tasks).

On appeal, Jaramillo argues that the ALJ failed to articulate an evidentiary basis to support his finding that Mesa's impairments were not "medically equivalent" to any Listed Impairment at step three. See Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981) (stating that the ALJ should make "a clear and satisfactory explication of the basis on which [his or her conclusion] rests."). She relies on our recent holding in Burnett v. Commissioner, 220 F.3d 112, 119-20 (3d Cir. 2000), where we held that an ALJ's explanation at step 3---stating in toto, that "[a]lthough [the applicant] has established that she suffers from a severe musculoskeletal [impairment], said impairment failed to equal the level of severity of any disabling condition contained in Appendix I, Subpart P of Social Security Regulation No. 4"---was "hopelessly inadequate" because it "merely stated a summary conclusion," thereby precluding "meaningful judicial review." Id. at 119 (internal quotations omitted).

Burnett is distinguishable. In Burnett, the ALJ failed to identify what Listing he was referring to or what evidence he relied on to come to his conclusion. By contrast, in the present case, the ALJ clearly identified the specific Listings to which he was referring,

8

i.e., 111.00 (pertaining to neurological impairments) and 112.00 (pertaining to mental disorders), and discussed the evidence presented at length. We therefore conclude that the ALJ's reasoning at the "medical equivalent" level of Step 3 was sufficient and permits meaningful review. See Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004) (stating that particular language or format is not required; rather the ALJ must only provide a "sufficient development of the record and explanation of findings to permit meaningful review").

We likewise hold that the ALJ's explanation at the "functional limitations" level of step 3 was both satisfactory and supported by sufficient evidence. The ALJ's decision explicitly listed the evidence he relied upon for each of the six functional domains and adequately articulated a sufficient evidentiary basis for his decision. We reject Jaramillo's argument that the ALJ committed reversible error by not giving controlling weight to Mesa's treating physician's opinion that he had an "extreme limitation in the area of concentration, persistance, or pace." A-28. As noted by the ALJ, the opinions of the treating physician and the State Agency Psychological Consultant differed. As we held in Kent v. Schweiker, 710 F.2d 110, 115 n.5 (3d Cir. 1983), a referee may reject the conclusions of the treating physician if he "weigh[s] [those conclusions] against the other relevant evidence and explain[s] why certain evidence has been accepted and why other evidence has been rejected." See also Allen v. Bowen, 881 F.2d 37, 41 (3d Cir. 1989) (holding that where a treating physician's opinion is contradicted by a consulting

9

physician, "the ALJ must explain on the record the reasons for rejecting the opinion of the treating physician"). The ALJ has adequately done so in the present case, and his conclusion is supported by substantial evidence.

Finally, we reject Jaramillo's argument that the ALJ failed to give her testimony regarding Mesa's subjective complaints of pain the required consideration. A claimant's subjective statements about pain or other symptoms, without more, cannot be the basis for a disability. See 42 U.S.C. § 1382c(3)(A). The ALJ adequately explained that Jaramillo's testimony was inconsistent with the medical evidence as well as the reports submitted by Mesa's teachers and other examiners.

### III.

For the above reasons, we hold that the ALJ's decision is supported by sufficient evidence in the record, and that he articulated a sufficient evidentiary basis for his decision. The decision of the District Court is affirmed.